## LYNCH v. ALWORTH–STEPHENS CO.*

(Circuit Court of Appeals, Eighth Circuit.   November 12, 1923.)

No. 6219.

**1. Internal revenue ⬅➡7—Income tax; deduction for depletion of mine.**

The provision of Income Tax Act Sept. 8, 1916, § 12 (b), Second, (b), being Comp. St. § 6336*l*, permitting a deduction from the gross annual income of a corporation, "in the case of mines a reasonable allowance for depletion thereof, not to exceed the market value in the mine of the product thereof which has been mined and sold during the year," is not limited in its application to the owner of the fee title to the mine, but extends to lessees or any one whose property right and interest therein has been depleted by extraction and sale of the product during the year.

**2. Statutes ⬅➡188—Should be given plain, obvious, and rational meaning.**

The plain, obvious, and rational meaning of a statute should always be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute intellect. would discover.

**3. Constitutional law ⬅➡70(1)—Statutes ⬅➡212—Legislature, in making general grant without exception within general terms, presumed to have intended no exception; courts may not read exceptions into general statutes.**

When the legislative body has made a general grant, and made no exception of any class of persons or corporations within its general terms, that fact raises a conclusive legal presumption that it intended to make no such exception, and inhibits the courts from making such an exception by judicial legislation.

**4. Internal revenue ⬅➡7—Mine lessee held entitled to deduction for depletion from royalty income from sublessee.**

The corporation lessee of an iron mine, required to pay a royalty per ton on ore produced, had subleased at a higher royalty, and prior to March 1, 1913, the mine had been stripped, the quantity of ore therein was definitely known with substantial accuracy, and also the length of time in which it would be exhausted at the minimum rate of production required by the leases. The value of the ore in the mine on March 1, 1913, and at all times thereafter exceeded the maximum royalty reserved. *Held* that, under Act Sept. 8, 1916, §§ 1–12 (Comp. St. §§ 6336a–6336*l*), the corporation was entitled to a deduction from its gross income for the year 1917, for purposes of income and excess profits tax, of a sum equal to the present value on March 1, 1913, of its excess royalty, computed on the quantity of ore mined during the tax year, and with reference to the number of years its royalties would be distributed.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari granted 44 Sup. Ct. 334, 68 L. Ed. ——.

Action at law by the Alworth–Stephens Company against Margaret C. Lynch, executrix of the will of E. J. Lynch, late Collector of Internal Revenue. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 278 Fed. 959.

A. Calder Mackay, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., and Nelson T. Hartson, Solicitor of Internal Revenue, of Washington, D. C., on the brief), for plaintiff in error.

W. D. Bailey, of Duluth, Minn. (J. L. Washburn and Oscar Mitchell, both of Duluth, Minn., on the brief), for defendant in error.

Before SANBORN and LEWIS, Circuit Judges, and McGEE, District Judge.

SANBORN, Circuit Judge. This is an action at law. Alworth-Stephens Company, a corporation organized in 1907, hereafter called the plaintiff, originally brought this suit against E. J. Lynch, Collector of Internal Revenue of the United States, for whom after his death his executrix was substituted as defendant, to recover $17,128.44, which, it alleged, the collector unlawfully exacted from it, and it paid under protest, as a part of its net income and excess profits taxes for the year 1917. The parties set forth their respective claims in proper pleadings, stipulated that the case should be tried by the court; it was so tried; the court made a special finding of the facts and rendered a judgment for the plaintiff, which the defendant challenges by this writ of error.

The finding of facts and the computations of the court below, which it set forth with commendable clearness, accuracy, and patience, are not challenged in this court. From those facts and computations that court deduced the conclusion and adjudged that, in ascertaining its net taxable income and excess profits taxes for the year 1917, the plaintiff was lawfully entitled to deduct from the gross amount of its income for that year an allowance of $55,726.80 (representing an overpayment of tax in the sum of $17,128.44) on account of the depletion of the market value, as of March 1, 1913, of its property rights and interests in the Perkins mine and the Hudson mine, caused by the extraction and disposition of ores from those mines during the year 1917.

The plaintiff had a lease of the Perkins mine for 50 years, made in 1908, under which it was under an obligation to pay to the lessor, the owner of the mine, 30 cents for each ton of ore taken from the mine, and it had subleased the mine in 1908 to one Lutes, who had agreed to pay 75 cents per ton for every ton taken from the mine, and the mine was operated in 1917 by an assignee of Lutes under the lease to him, so that the plaintiff received 45 cents per ton of the ore extracted during that year. It had a lease for 50 years of the Hudson mine, made by the fee owners thereof in 1909, under which it was required to pay to the lessors 30 cents per ton for the ore taken from the mine, and in 1909 it had subleased this mine to the Syracuse Mining Company, which had agreed by the terms of the lease to pay to it

60 cents per ton for every ton taken from the mine and this mine was operated under this lease in 1917.

On March 1, 1913, and at all times thereafter, the plaintiff was the owner of the property interests and rights in these mines evidenced by these leases. On March 1, 1913, these mines had been stripped of their overburden of earth, so' that the ore therein was ready for mining by the open pit method, and the mines had been thoroughly explored, so that the tonnage of ore in them was definitely known, and it was also known that the ore therein would be mined and the mines would be completely exhausted, as they subsequently were, within seven years from March 1, 1913. On March 1, 1913, and ever since that date, including the year 1917, the fair market value of the ore in each of these mines and the fair market value in each of the mines of every ton of the products thereof was at least 75 cents per ton. The aggregate amount of all the allowances made on account of the depletion of the market value of its property interests in the two mines to the plaintiff, including the allowance for 1917 made by the court below in this case, was less than the fair market value as of March 1, 1913, of the plaintiff's property interests in the two mines, and the allowances for the year 1917 permitted by the court below in this case do not exceed the fair market value in the mine of the product thereof which was mined, sold, and paid for during the year 1917. This statement is also true of each of the mines and the ore therein taken by itself.

During the year 1917 the plaintiff had no property other than its property interests in these two mines under the leases described, and it had no other income than that derived from these mines under these leases. So it was that the market value of the ore in these mines on and at all times after March 1, 1913, was more than 75 cents per ton. The fee owners of the mines, the lessors of the plaintiff, had the first and superior property right and interest therein to the extent, but not exceeding, 30 cents per ton of the ore as extracted. The plaintiff had the second property right and interest, superior to that of its lessees to the extent, but not exceeding, 45 cents per ton of the ore as extracted from the Perkins mine, and to the extent of, but not exceeding, 30 cents per ton of the ore as extracted from the Hudson mine. The lessees of the plaintiff had the third property right and interest of the ore in these mines as extracted, subject to the property rights of the original lessors and of the plaintiff. The property rights of these lessees were as absolute, as indefeasible, as enforceable at law and in equity, and more valuable than the property rights and interests of the owners of the titles to the mines, of the lessors of the plaintiff, which interests were limited by the terms of the leases.

The depletion of the market value of the mines and of the ore in the mines by the extraction and sale of the ore therein unavoidably depleted the market value of the property rights and interests in the mines of the respective parties interested in them and in the ore therein in proportion to their respective rights and interests. Every ton of ore extracted and sold necessarily depleted at the time of such extraction and sale the property right of the original lessors in the Perkins mine 30 cents, depleted the property rights of the plaintiff therein 45 cents,

and depleted the property rights of the plaintiff's lessees by the differences between 75 cents and the value in the mine of the ton so extracted and sold. It was in view of these facts that the court below found that the market value as of March 1, 1913, of the plaintiff's property rights and interests in these mines, was depleted to the amount of $55,726.80 (representing an overpayment of tax in the sum of $17,128.44) by the extraction and sale of the ore from which the plaintiff derived its income in the year 1917.

This conclusion of the court below is assigned as error, and the provisions of the statutes which condition the decision of the issue thus presented are found in the Act of September 8, 1916, 39 Stat. 756, 758, 759, which prescribe the deductions permitted from the gross amount of the plaintiff's income for the year 1917 in order to ascertain its net taxable income for that year and those provisions are these:

"For the purpose of ascertaining the gain derived from the sale or other disposition of property, real, personal, or mixed, acquired before March 1, 1913, the fair market price or value of such property as of March 1, 1913, shall be the basis for determining the amount of such gain derived." Section 2 (c), being Comp. St. § 6336b; section 10, 39 Stat. 766.

"Sec. 10. That there shall be levied, assessed, collected, and paid annually upon the total net income received in the preceding calendar year from all sources by every corporation, joint-stock company or association, or insurance company, organized in the United States, no matter how created or organized but not including partnerships, a tax of two per centum upon such income. * * *" 39 Stat. 765 (Comp. St. § 6336j).

"Sec. 12 (a). In the case of a corporation, joint-stock company or association, or insurance company, organized in the United States, such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources—

"First. All the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties. * * *

"Second. All losses actually sustained and charged off within the year and not compensated by insurance or otherwise, including a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business or trade; (a) in the case of oil and gas wells a reasonable allowance for actual reduction in flow and production to be ascertained not by the flush flow, but by the settled production or regular flow; (b) in the case of mines a reasonable allowance for depletion thereof not to exceed the market value in the mine of the product thereof which has been mined and sold during the year for which the return and computation are made, such reasonable allowance to be made in the case of both (a) and (b) under rules and regulations to be prescribed by the Secretary of the Treasury: Provided, that when the allowance authorized in (a) and (b) shall equal the capital originally invested, or in case of purchase made prior to March 1st, 1913, the fair market value as of that date, no further allowance shall be made."

[1] Counsel for the defendant concede that an allowance to the original lessors, the owners of the fee title to the mines, on account of the depletion of the market value as of March 1, 1913, of their property rights and interests therein caused by the extraction of the ores therefrom in 1917, is expressly granted to them by section 12 of the act of 1916. But they deny that the allowance of any depletion whatever on account of the reduction by such extraction and sale of ore of the market value as of March 1, 1913, of the property rights and

interests of the plaintiff, or its lessees, therein on March 1, 1913, is authorized by that act.

But that act (section 10) requires every corporation organized in the United States to compute and pay its net income and excess profits taxes and, without any restriction or limitation to corporations that own the fee titles to mines, or to lessors thereof, or to any other class of mining corporations (section 12, Second, b), it expressly authorizes:

"In the case of mines a reasonable allowance for depletion thereof not to exceed the market value in the mine of the product thereof which has been mined and sold during the year for which the return and computation are made."

[2] When one first reads this provision, no doubt or uncertainty as to the parties to whom it authorizes these allowances for depletion to be made occurs to the ordinary mind. The suggestion does not arise that this is a grant to the owners of the fee titles to mines alone, or that lessees and all others having property interests in them are excepted from the grant. It requires the careful search and study of an acute and ingenious intellect to find and persistently assert that position. The plain, clear and reasonable meaning of the statute seems to be that the reasonable allowance for depletion in case of a mine is to be made to every one whose property right and interest therein has been depleted by the extraction and disposition "of the product thereof which has been mined and sold during the year for which the return and computation are made." And the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover. United States v. Deans, 230 Fed. 957, 961, 145 C. C. A. 151; Imperial Fire Insurance Co. v. Coos County, 151 U. S. 452, 463, 14 Sup. Ct. 379, 38 L. Ed. 231; U. S. v. Ninety-Nine Diamonds, 139 Fed. 961, 965, 72 C. C. A. 9, 2 L. R. A. (N. S.) 185; Stevens v. Nave-McCord Mercantile Co., 150 Fed. 71, 75, 80 C. C. A. 25; Standard Life & Accident Ins. Co. v. McNulty, 157 Fed. 224, 226, 85 C. C. A. 22; Delaware Ins. Co. v. Greer, 120 Fed. 916, 921, 57 C. C. A. 188, 61 L. R. A. 137.

[3] Another established rule for the interpretation of statutes is that, when the legislative body has made a general grant and made no exception of any class of persons or corporations within its general terms, that fact raises a conclusive legal presumption that it intended to make no such exception and inhibits the courts from making such an exception by judicial legislation. Cella Commission Co. v. Bohlinger, 147 Fed. 419, 425, 78 C. C. A. 467, 8 L. R. A. (N. S.) 537; Chauncey v. Dyke Bros., 119 Fed. 1, 15, 55 C. C. A. 579; Wrightman v. Boone County, 88 Fed. 435, 436, 31 C. C. A. 570; Union Central Life Ins. Co. v. Champlin, 116 Fed. 858, 860, 54 C. C. A. 208; United States v. Alamogordo Lumber Co., 202 Fed. 700, 706, 121 C. C. A. 162; Brun v. Mann, 151 Fed. 145, 157, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154; Ayres v. Cone, 138 Fed. 778, 786, 71 C. C. A. 144.

There were two classes of corporations interested in mines: The owners of the fee titles to them, or the lessors thereof; and the lessees thereof. The congressional grant of allowances for depletion in case

of mines, by its general terms, included both classes and excepted neither from its benefits, and it is not the province of the courts to exclude either of them therefrom. The grant of the reasonable allowances for depletion in case of mines is as broad and general as the requirement that in cases of mines every corporation interested therein shall compute and pay its income and excess profits taxes.

It is common knowledge that in the case of mines the property rights and interests therein and the incomes derived therefrom by lessees and others than those who own the titles to the mines are much more valuable than the rights and interests of such owners, and it is difficult to believe that, if Congress had intended by this grant of reasonable allowances for depletion to restrict it to the owners of the titles to mines, or to except from its benefits lessees and others owning all other property rights and interests therein, it would not have clearly expressed that intention by a restriction or by exceptions inserted in the act. The legal presumption is strong—it seems conclusive—that Congress never made, and that it never intended to make, any such limitation or exception.

In opposition to these considerations counsel invoke the fact that the Treasury Department in 1917 issued a document known as "Form A–M–MS," entitled, "Schedule for Depletion 1909 to 1917," in which it declared that under none of the acts of 1909, 1913, or 1916 was a lessee entitled to deduction from income on account of depletion, and that, where a mine was leased before March 1, 1913, the allowance for depletion in favor of the lessor is not based on the fair market value of the ore in place as of March 1, 1913, but on the lessor's interest therein on that date. Under this rule, in the case at hand, the lessors, who had a property interest in the ore in place in this mine in 1917 to the extent of 30 cents per ton in the Perkins mine, received a reasonable allowance for depletion of their property while the plaintiff, who had a property interest in that mine to the extent of 45 cents per ton therein, received no allowance for depletion.

Counsel cite us to no opinion or decision of any of the officers of the Treasury Department which presents any sound reason for this rule or for its discrimination against lessees. And by Treasury Decision No. 3386, under date of August 22, 1922, that department abandoned that rule and placed lessees on the same plane as lessors in the case of oil and gas leases which, under section 12 of the act of 1916, are placed on the same plane as leases in the case of mines, declared that in the case of a lessee the capital to be returned "is the fair market value of the lessee's interest as of March 1, 1913," and that "the value of the equities of lessor and lessee shall be computed separately, but when determined of the same basic date shall together never exceed the value at that date of the property in fee simple." Prior to this decision the regulations provided that a lessee of oil and gas wells was entitled to no allowance for depletion, while under this latter decision he receives a reasonable allowance in proportion to the value of his property right and interest in the wells. This decision of August 22, 1922, is in accord with the decree below and seems equitable and lawful.

Counsel argue that no allowance for depletion should be made to the plaintiff on account of the extraction and sale of ores from the

mines in 1917, because it received on account thereof the royalties of 45 cents per ton from the Perkins mine and 30 cents per ton from the Hudson mine, pursuant to the plaintiff's leases thereof. But on March 1, 1913, the plaintiff owned the property right and interest in these mines to collect and receive these royalties and Congress expressly granted to the plaintiff the right and privilege of a reasonable allowance in the ascertainment and computation of its net income and excess profits taxes for the depletion of the market value as of March 1, 1913, of that property right and interest by the extraction and sale of the ore in the mine during the year 1917, for which the return and computation in this case was made.

Moreover, counsel's argument here is equally cogent to sustain the conclusion that the fee owners and original lessors, who received their 30 cents per ton royalties on account of the extraction of the ores in 1917, were entitled to no allowance for depletion, a position which counsel themselves admit is unsound.

Another contention of counsel is that it was error to grant the lessee any allowance for depletion because such allowance results in granting the same allowance for depletion twice, once to the lessor and once to the lessee; but no such allowance has ever been made in this case and no such allowance is claimed. The court below limited the plaintiff's allowance to the depletion of the market value as of March 1, 1913, of its individual right and interest in the mines and the ore in them, and no claim by any one has been made for the same allowance.

Counsel cite and seem to rely upon the opinion of the Circuit Court of Appeals of the Sixth Circuit in Weiss v. Mohawk Mining Co., 264 Fed. 502, in which that court held that the lessee in that mining case was not entitled to a reasonable allowance for depletion of the value of its property right in the royalties to accrue to it under the leases of the mine. The opinion in the Weiss Case has been carefully read and studied, but, after careful consideration, notwithstanding our great respect for and deference to the judges who concurred in that opinion, it has not proved persuasive.

The question in the Weiss Case was, and the question in this case is, whether the grant of section 12, Second, (b), of the act of 1916, in the case of mines, of a reasonable allowance for depletion is to lessors, lessees, and others who owned valuable rights and interests in mines on March 1, 1913, in proportion to their respective interests, or is limited and restricted to lessors who were owners of the fee titles to the mines. In the Weiss Case the court held that the grant was restricted to lessors who were fee owners of the mines alone and that it excluded lessees from all benefits thereunder.

The court based this conclusion, first, on the proposition that the question here under consideration had been conclusively determined by the decision of the Supreme Court in United States in Biwabik Mining Co. in 247 U. S. 116, 38 Sup. Ct. 462, 62 L. Ed. 1017; and, second, upon the position that the same allowance for depletion could not be lawfully twice made, once to the lessor and once to the lessee. The second proposition is not in issue in the case in hand. The allowance in this case has been sedulously limited to the market value

as of March 1, 1913, of the individual property right and interest of the plaintiff in the two mines.

After mentioning the arguments of counsel in support of the view that the grant of the allowance for depletion was not limited to lessors or fee owners of mines, the court in the Weiss Case, 264 Fed. 504, 505, said:

"These contentions would deserve serious consideration, if the questions involved were open; but we cannot think that they are. We cannot conceive any substantial distinction as applied to a mine between that depreciation or allowance for capital assets consumed which was sought by mine owners under the earlier acts, and that depletion which was expressly allowed by the amendment of 1916. From every point of view, this kind of depreciation or allowance was depletion, and this allowed depletion is depreciation or diminution of capital, and when the question of right to the allowance arises as between fee owner and lessee, it can make no difference whether the claimed allowance is called by one name or by the other."

See U. S. v. Biwabik Mining Company, 247 U. S. 116, 38 Sup. Ct. 462, 62 L. Ed. 1017.

But if there were no substantial distinction as applied to a mine between that depreciation or allowance for capital assets consumed which was sought by mine owners under the earlier acts, and that depletion which was expressly allowed by the act of 1916, there remains, nevertheless, this distinction and difference between the right to the allowance sought under the earlier acts and the right to the allowance sought in this case and in the Weiss Case. Under the earlier acts, the right to the allowance sought was not expressly granted by Congress; under the act of 1916, the right to the allowance sought is expressly granted. The difference is great.

Moreover, was the "depreciation" of the act of 1909, and other acts prior to 1916, the same thing as the depletion granted in the latter act? And did the Supreme Court decide the instant question in United States v. Biwabik Mining Co., a case which did not arise under the act of 1916, but arose under the act of 1909? Act Aug. 5, 1909, 36 Stat. 113, § 38, provided for deductions from gross incomes among other things of:

"Second: * * * All losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property, if any. * * *"

In Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 Sup. Ct. 201 (61 L. Ed. 460) which arose under the act of 1909, the Sargent Company, which was the fee owner and lessor of a mine, sought a reduction of its taxable income on account of the depreciation of its mine by the extraction and sale of ore from which it received royalties. But the Supreme Court, in 242 U. S. 524, 525, 37 Sup. Ct. 207 (61 L. Ed. 460), said:

"The statute permits deduction of 'all losses actually sustained within the year, * * * including a reasonable allowance for depreciation of property.' What was here meant by 'depreciation of property'? We think Congress used the expression in its ordinary and usual sense as understood by business men. It is common knowledge that business concerns usually keep a depreciation account, in which is charged off the annual losses for wear and tear, and obsolescence of structures, machinery and personalty in use in

the business. We do not think Congress intended to cover the necessary depreciation of a mine by exhaustion of the ores in determining the income to be assessed under the statute by including such exhaustion within the allowance made for depreciation. It would be a strained use of the term 'depreciation' to say that, where ore is taken from a mine in the operation of the property, depreciation, as generally understood in business circles, follows. True, the value of the mine is lessened from the partial exhaustion of the property, and, owing to its peculiar character, cannot be replaced. But in no accurate sense can such exhaustion of the body of the ore be deemed depreciation. It is equally true that there seems to be a hardship in taxing such receipts as income, without some deduction arising from the fact that the mining property is being continually reduced by the removal of the minerals. But such consideration will not justify this court in attributing to depreciation a sense which we do not believe Congress intended to give to it in the act of 1909.

"It may be admitted that a fair argument arises from equitable considerations that, owing to the nature of mining property, an allowance in assessing taxes upon income should be made for the removal of the ore deposits from time to time. Congress recognized this fact in passing the income tax section of the Tariff Act of 1913 (section II, 38 Stat. 166, 167, c. 16 [Comp. Stat. 1913, §§ 6319–6322]), when it permitted 'a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business, not to exceed, in the case of mines, five per centum of the gross value at the mine of the output for the year for which the computation is made'; and in the Income Tax Law of September 8, 1916, 39 Stat. 756, 769, a reasonable allowance is made in the cases of mines for depletion thereof, 'not to exceed the market value in the mine of the product thereof which has been mined and sold during the year for which the return and computation are made.' These provisions were not in the act of 1909, and, as we have said, we think that Congress, in that act, used the term 'depreciation' in its ordinary and usual significance. We therefore reach the conclusion that no allowance can be made of the character contended for as an item of depreciation."

So it was that when the Weiss Case was decided the Supreme Court had expressly adjudged that the "depreciation" of the act of 1909, and other acts, was neither the depletion nor the equivalent of the depletion of the act of 1916, nor of the exhaustion of the act of 1913, and the reasonable, if not the unavoidable, deduction from the opinion in the Sargent Company Case, which has been quoted, is that, if that case had arisen under the act of 1913, or under the Act of September 8, 1916, that court would have sustained an allowance for depletion.

In the case of United States v. Biwabik Mining Co., 247 U. S. 116, 38 Sup. Ct. 462, 62 L. Ed. 1017, which arose under the act of 1909, a lessee of a mine made a like claim for an allowance for the depreciation of its property to that claim which the lessor in the Sargent Land Company Case had made, and the Supreme Court disallowed its claim on the same ground that it had disallowed that of the lessor in the latter case.

Neither of these cases arose under the act of 1916; in neither of them, nor in any other decision of the Supreme Court cited or to which the attention of this court has been called, did the Supreme Court hold that the depreciation of property specified in some of the earlier acts of Congress was the equivalent of the depletion of it on account of which the reasonable allowance is expressly granted by the act of 1916. Moreover, in the Sargent Land Company Case, the Supreme Court, as we have seen, expressly held that such depreciation for

which allowance was granted in the act of 1909 was not the equivalent of the depletion for which the allowance was granted in the act of 1916. Neither in the Sargent Land Company Case nor in the Biwabik Mining Company Case did the Supreme Court hold that the grant of any of these allowances in mining cases was restricted to lessors or to the fee owners of the mines alone, nor did it make any discrimination between lessors and lessees. On the other hand, in the Sargent Land Company Case and the Biwabik Case it treated the lessor and the lessee exactly alike.

Upon consideration of the foregoing opinions and decisions of the Supreme Court, we are unable to resist the conclusion that they do not conclusively or inferentially adjudge or intimate that the grant of section 12, Second, (b), of the act of 1916, to corporations, in the case of mines, of a reasonable allowance for depletion, is limited to lessors who are fee owners of the mines alone, and that it grants no such allowance to lessees of mines or to other corporations owning property interests therein. On the other hand, in view of those decisions and opinions and in view of the plain terms of the grant, without limitation or exception, our opinion is that:

[4] It was the purpose, intent and object of Congress by the enactment of section 12, Second, (b), of the Act of September 8, 1916, 39 Stat. 768, in the case of mines, to grant to fee owner, lessor, lessee, and other corporations who were on March 1, 1913, the owners of valuable property rights and interests in mines, in reduction of their respective gross incomes to ascertain their net taxable incomes, a reasonable allowance for the depletion of their property interests in the mines and in the ores therein by the extraction and sale of the ores in the respective years for which the computations and returns of their incomes should be made, not exceeding, in the aggregate, the market value of those property interests on March 1, 1913.

The terms of the statute clearly express and carry into effect this intent, purpose, and object. The true construction and legal effect of this statute is to grant to lessee and other corporations which owned valuable property interests in mines on March 1, 1913, reasonable allowances for depletion of those interests in proportion to the amounts and values of the interests and of the depletion to the same extent that it made such grant to lessor corporations who were the fee owners of the mines.

The plaintiff was entitled to the allowance for depletion on which its judgment in this case is founded, and that judgment is affirmed.