## MERLE–SMITH v. COMMISSIONER OF INTERNAL REVENUE.

### FOWLER v. SAME.

### Nos. 73, 74.

Circuit Court of Appeals, Second Circuit.
June 30, 1930.

Sprague, Merle-Smith & Smart, of New York City (Talbert W. Sprague, Van S. Merle-Smith, and Charles C. Parlin, all of New York City, of counsel), for petitioners.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Dewitt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

We will treat these petitions in one opinion.

In the Kate Fowler Merle-Smith Case, she reviewed before the Board of Tax Appeals three separate deficiency notices as to income and profit taxes covering 1917 to 1921, inclusive. They were consolidated before the Board. The order entered by the Board disallowed depletion claims as to mining property. The facts are that the petitioner's father died November 7, 1904, and by his will, probated in California and Minnesota, he created two trusts known as the Kate Fowler mining trust and the Marjorie Fleming mining trust. Petitioner, born December 27, 1888, is referred to in the will as "my daughter Kate." To the Kate Fowler mining trust, he gave one-half of his real estate, and interest in real estate, and one-half of all his mineral rights, right in minerals, ores, and fossils, mineral reservations, and surface rights in certain counties of Minnesota, and one-half of all his stock in corporations owning mines, mineral lands, or mineral rights, and stock in mining corporations. He provided an income for his daughter Kate, giving her the corpus of the trust "when she shall arrive at the age of forty-five years, if she shall live so long, with the power to dispose thereof by will at any time before she shall arrive at the age of forty-five years; and if she shall die intestate as to such property before arriving at the age of forty-five years, then to her child or children, and to the issue of any deceased child or children, her surviving." In the event of her death before the age of forty-five, without children, other disposition was made to relatives. The other half interest in such properties as thus described was placed in the Marjorie Fleming mining trust. The trustees were named, and they were directed to have full charge, possession, and control of the property, with power to make and change leases, collect royalties, rents, and income, borrow money necessary to pay taxes and expenses, and mortgage or incumber the property. The trustees were required to pay the taxes and necessary expenses of the trust, including compensation of the trustee, 8 per cent. of the net annual income to his son-in-law, 17 per cent. of the net annual income to his widow, the petitioner Margaret B. Fowler, and 75 per cent.

to the petitioner. As to the Marjorie Fleming trust, similar provisions were made for taxes and expenses in preserving the corpus of the trust, also compensation of the trustee, and Marjorie Fleming received 75 per cent. of the income with 17 per cent. of the net annual income to be paid to the petitioner Margaret B. Fowler.

Both petitioners' rights to the royalties, first paid to the trustees and then to petitioners, came under these trusts. They are, in this sense, beneficiaries. But the trust from which Kate Fowler Merle-Smith obtained her royalties terminates, and the corpus of the trust vests in her when she arrives at the age of forty-five, and, if she dies prior to that time, it will go as directed by her in her will. There is no paramount or antecedent beneficiary interest in any other person. Indeed, her right to exercise the power of disposition by will prevents her being divested of this interest prior to her forty-fifth birthday. She could defeat her right to possession only by dying intestate.

The trustees have no power of disposition of the mining properties in either trust. They are only permitted to sell property upon which no mineral or ore has been discovered prior to the sale. Most of the property was under lease to an operating lessee for a term of years extending beyond the term of the trust. Apart from management, such as payment of taxes, distribution of royalties, and conservation of properties, the trustees had no duties.

The property in each trust was charged with income obligation of 17 per cent. to Margaret B. Fowler, testator's widow, and 8 per cent. in favor of the testator's son-in-law, but this only during the term of the trusts and for a shorter period if the chief beneficiary of either died before the trust was terminated. If either Mrs. Fowler or Mr. Fleming died before the Kate Fowler mining trust terminated, the petitioner Kate Fowler Merle-Smith would be entitled to the income during the remainder of the trust. And, in the case of Marjorie Fleming trust, if Marjorie Fleming died any time before she arrived at the age of forty years, Margaret B. Fowler's right to royalties would cease under that trust. The petitioner Kate Fowler Merle-Smith will be forty-five years of age, if living, in 1933.

The decision of the Board of Tax Appeals is grounded upon the claim that the petitioner's right to income is that of a beneficiary of a trust only. Irwin v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897; Baltzell v. Mitchell, 3 F.(2d) 428 (C. C. A. 1). It is argued that these beneficiaries be taxed upon their distributive share and they have no interest in the capital or corpus held by the trustee.

By the Revenue Act of 1916, c. 463, § 5 (39 Stat. 759), it is provided that, for the purpose of income tax, there shall be allowed as deductions, "in the case of mines a reasonable allowance for depletion thereof not to exceed the market value in the mine of the product thereof, which has been mined and sold during the year for which the return and computation are made, such reasonable allowance to be made in the case of both (a) and (b) under rules and regulations to be prescribed by the Secretary of the Treasury: Provided, That when the allowances authorized in (a) and (b) shall equal the capital originally invested, or in case of purchase made prior to March first, nineteen hundred and thirteen, the fair market value as of that date, no further allowance shall be made."

By the Revenue Act of 1918, c. 18, § 214 (a)(10), 40 Stat. 1067, deductions are allowed, "in the case of mines * * * a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: Provided, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property * * * on that date shall be taken in lieu of cost up to that date. * * * "

By Act Nov. 23, 1921, c. 136, § 214(a) (10), 42 Stat. 241, deductions are allowable, "in the case of mines, * * * a reasonable allowance for depletion * * * according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: Provided, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property * * * on that date shall be taken in lieu of cost up to that date. * * * "

By the Revenue Act of 1926, c. 27, § 274 (c), 44 Stat. 55 (26 USCA § 1048c), "the board shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any penalty, additional amount or addition to the tax should be assessed, if claim therefor is asserted by the commissioner at or before the hearing or a rehearing."

The total amount of the net expected royalties under this lease was $20,272,297.77. The Commissioner determined, applying the Hoskold formula of 6 per cent. interest rate and 4 per cent. redemption rate, that the value March 1, 1913, of the ore reserve in the consolidated properties was $10,287,970.24. Accepting these figures, the Commissioner divided the royalties to be expected under the consolidated lease of $10,287,970.24 by the sum of the estimated tonnage (53,455,468), which resulted in a unit of 19.246 cents per ton, and in computing the allowance for the lessor's depletion in respect of this consolidated lease, applied said unit of 19.246 cents per ton to the actual tons of ore paid for by the lessees in each respective year over the period and allocated one-quarter of the amount in each respective year to the Kate Fowler mining trust and one-quarter to the Marjorie Fleming mining trust. The trusts together owned a half interest in the lease to the Minnesota Iron Company. In his determination of deficiencies, the Commissioner in each year prorated the depletion and allocated it to each trust among the respective recipients of income therefrom in accordance with the amount of income accruing to each; that is, 75 per cent. to Kate Fowler Merle-Smith and 17 per cent. to Margaret B. Fowler, as to the Kate Fowler mining trust, and 17 per cent. to Margaret B. Fowler as to the Marjorie Fleming mining trust. The estimate of tons of ore in the mines, as of March 1, 1913, is based upon an estimate at the time of 45,342,271 tons of known ore and 8,113,197 tons of probable ore.

The appeal to the Board of Tax Appeals, taken by the petitioners, claimed that the amount allowed for depletion was insufficient. When the plea was presented, the Commissioner averred that he was mistaken in allowing any depletion. The Board disallowed all claims of depletion.

In considering the Revenue Act of 1916, as amended by the 1917 act, where there is no provision for apportionment of depletion allowance between lessor and lessee of mining property, the Supreme Court said, in Lynch v. Alworth-Stephens Co., 267 U. S. 364, 370, 45 S. Ct. 274, 275, 69 L. Ed. 660:

"We agree with the Circuit Court of Appeals (294 F. 194) that: 'The plain, clear, and reasonable meaning of the statute seems to be that the reasonable allowance for depletion in case of a mine is to be made to every one whose property right and interest therein has been depleted by the extraction and disposition "of the product thereof which has been mined and sold during the year for which the return and computation are made.'" And the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.' * * * The deduction for depletion in the case of mines is a special application of the general rule of the statute allowing a deduction for exhaustion of property. While respondent does not own the ore deposits, its right to mine and remove the ore and reduce it to possession and ownership is property within the meaning of the general provision. Obviously, as the process goes on, this property interest of the lessee in the mines is lessened from year to year, as the owner's property interest in the same mines is likewise lessened."

In United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054, the Supreme Court again recognized that a depletion allowance is essential to reach a true income in the case of mining and that a lessor was entitled to a deduction from his gross income in determining taxable income. See, also, Logan v. Commissioner (C. C. A. 2) 42 F. (2d) 193, May 19, 1930.

The petitioners have a property right and interest, within the decision of Bryan v. Kennett, 113 U. S. 179, 5 S. Ct. 407, 28 L. Ed. 908, as real as that of the lessee referred to in Lynch v. Alworth-Stephens Co., supra. Their interest in the ore body is as direct as the interest of the lessor, which is contingent upon the fulfillment by the lessee of the obligations under its lease. Included in the current payment of royalties is a sum representing the value of each ton of ore removed. As stated in the Lynch Case, allowance is to be made "to every one whose property right and interest therein has been depleted," and it would therefore seem that these petitioners should be allowed deductions for depletion which their property interest sustained by reason of the mining operation.

The government accedes to the doctrine that in all mining operations there is some depletion. But whose ore is depleted is put into question. If the petitioners have any property interest in the corpus, it is being depleted. Certainly, they who receive the income, the title owners of the corpus of the trust, the trustees, might have a depletion allowance. These petitioners who have the property right to which we have referred, receive the royalties without deduction. The statutes provide for depletion. The trustees

merely pass on the royalties received in the percentages the will requires of them. The terms of the trust require that the entire royalties be paid currently to the beneficiaries. No depletion reserve was to be set aside or retained by the trustees.

In Irwin v. Gavit, supra, the technical severance from the corpus of the trust of the interest of the beneficiary is taxable on the income received. But here, by the Board's decision, this purely technical severance of interest is relied upon as a justification for taking from this petitioner any allowance for depletion of property in which there is a real substantial capital interest. In the Baltzell Case, supra, Mrs. Baltzell had "a vested equitable remainder," which was a power to dispose of the property by her will; she had no legal remainder. At bar, the trust is not for life, for it ends at the forty-fifth birthday of the petitioner Kate Fowler Merle-Smith. Margaret Fowler's ceases at the same time or sooner in the event of the death of Kate Fowler Merle-Smith. The petitioner here has the real interest in the corpus. She possesses every important attribute of ownership. She has a 75 per cent. interest in the income, and she suffers most by the depletion. Apart from the payments to others of a 25 per cent. interest while they live during the period of the trust, she is in the position of one having others manage her property. It has always been the policy of the law to tax income and not capital or any part thereof. Stratton's Independence v. Howbert, 231 U. S 399, 34 S. Ct. 136, 58 L. Ed. 285; United States v. Biwabik Mining Co., 247 U. S. 116, 38 S. Ct. 462, 62 L. Ed. 1017. "The resulting hardship to operators of mines induced Congress to make provision in the Revenue Law of 1913 * * * and all later acts for some deduction on account of depletion in determining the amount of the taxable income from mines." United States v. Ludey, 274 U. S. 295, 303, 47 S. Ct. 608, 611, 71 L. Ed. 1054.

It is thus apparent that Congress intended that, as to the Revenue Acts, that only which is substantially net income should be taxed. Act of 1928, c. 852, § 23(e), 45 Stat. 800 (26 USCA § 2023(e). In Roxburghe v. United States, 64 Ct. Cl. 223, the plaintiff was merely a beneficiary entitled only to income of the trust created for her life. She had no interest in the corpus. The distribution to be made to her from the trust included nothing which could be considered as a part of the corpus. The taxpayer claimed a right to deduct the allowance provided by the act for the depreciation of the properties constituting the corpus of the trust. The difference between that case and the one at bar is that the intention of Congress as to depletion seems to be clear by the act. There is a direction in this trust to distribute to the petitioners not only income from the mining properties, but also a portion of what Congress has considered part of the capital, a part of the corpus of the trust. The depreciation involves no distribution of capital assets, but usually has to do with a reserve set up to compensate for the effects of time and wear and tear. In Irwin v. Gavit, supra, the court pointed out, at pages 162, 168, of 268 U. S., 45 S. Ct. 475, 476:

"But we think that the provision of the act that exempts bequests assumes the gift of a corpus and contrasts it with the income arising from it, but was not intended to exempt income property so-called simply because of a severance between it and the principal fund. * * * The money was income in the hands of the trustees and we know of nothing in the law that prevented its being paid and received as income by the donee. * * * This is a gift from the income of a very large fund, as income. It seems to us immaterial that the same amounts might receive a different color from their source."

The amount of royalties is measured by the ore mined, and its extraction directly depletes the property. In relation to the properties producing them, the royalties are only income to the extent that they exceed the allowance for depletion. Under the Revenue Acts, the status of the money derived from the property is determined by the relation to the property producing it. Taft v. Bowers, 278 U. S. 470, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362; United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Rockefeller v. United States, 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186; Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149; Southern Pacific Co. v. Lowe, 247 U. S. 330, 337, 38 S. Ct. 540, 62 L. Ed. 1142. With the right by statute of deduction for depletion, it follows that the allowance granted by the several Revenue Acts must be controlling. It follows that, in the absence of specific limitations in the act, an allowance for depletion must be considered in arriving at the amount taxable in respect to these royalties received by the petitioner. Nothing in the statutes differentiates 1917, 1918, 1919, 1920, and 1921 nor indicates that an allowance for depletion is limited to instances

where the amounts are not received by virtue of a trust, or that royalties paid under a lease of mining property are taxable in the hands of beneficiaries of a trust to a greater extent than they would be in the hands of a fee owner of the properties.

The Revenue Act of 1928, § 23(*l*), 45 Stat. 800 (26 USCA § 2023(*l*), authorizing a deduction for depletion, seems to be declaratory of existing law and specifically allows deductions in such computations to be apportioned between the income of beneficiaries and trustee in accordance with the provisions of the instrument creating a trust.

A reasonable allowance for depletion should have been made to each of the petitioners, in computing their income for the years in question. And, under the statute, it was proper to establish a fair market value of the mines as of March 1, 1913. Reinecke v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. 385. The statutes require a reasonable deduction for depletion. What is reasonable, under all the circumstances, is a matter for the Board to determine.

The orders are reversed, and causes remanded.

AUGUSTUS N. HAND, Circuit Judge (concurring).

While I agree that the beneficiaries in the Kate Fowler Merle-Smith and in the Margaret B. Fowler cases are entitled to a depletion allowance, I do not base my conclusion on the ground that they are vested with a future expectant estate in the corpus of the trust that is likely soon to fall in. I reach this result because the beneficiary in each case is receiving current distributions of capital from the trustees to the extent of the depletion sought to be allowed. Under the terms of the will the trustees were required to pay the full royalties after deduction only of the expenses of administration without regard to depletion of the corpus. Thus there was no opportunity for setting up a depletion account, and the trustees to the extent of the depletion were mere distributing agents of current realizations of capital.

It may be said that cases like Stratton's Independence v. Howbert, 231 U. S. 399, 34 S. Ct. 136, 58 L. Ed. 285, and Van Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460, where it was held that the full amount of royalties received from a mining lease represented taxable income, preclude an allowance for depletion here. But those decisions were under the Corporation Excise Tax Law of 1909 (36 Stat. 112, § 38). That law created a franchise tax which might be laid on the privilege of receiving gross payments, whereas the present tax is imposed upon income under statutes which specifically included an allowance for depletion, as the Excise Tax Law did not. Indeed under the recent Act of 1928 (45 Stat. 800 [26 USCA § 2023]), depreciation as well as depletion may be allowed to a beneficiary, and we may regard the latter act at least in so far as it covers depletion as declaratory of existing law.

While the beneficiary of a trust could not deduct capital losses from his income for the purpose of arriving at the net taxable amount [Baltzell v. Mitchell (C. C. A.) 3 F.(2d) 428], there seems to be no sufficient reason why depletion of the corpus should not be allowed, for, to that extent, there is no receipt of income.

The distribution in the cases before us was to the extent of an allowance for depletion, not a payment of income, but a transfer of capital which ought not to be taxed under income tax statutes, because the amendment to the Constitution only provides for the taxation of income and the statutes themselves purport to go no further.

The question whether deductions from income may be claimed depends on legislative grace, whereas taxation of capital may be regarded as outside both the constitutional amendment and the intendment of the statutes. All the Income Tax Acts provide for an allowance for depletion and appear to treat such an allowance as a capital item. The petitioners here are the only persons who can logically claim the allowance, and through their trustees they directly receive the royalties to which it relates.