**WILSON et al. v. ANDERSON, Collector of Internal Revenue.**

District Court, S. D. New York.
March 19, 1931.

Root, Clark, Buckner & Ballantine, of New York City (George E. Cleary, of New York City, and Clark T. Brown, of Washington, D. C., of counsel), for plaintiffs.

Robert E. Manley, Acting U. S. Atty., of New York City (W. H. Schulman, of New York City, of counsel), for defendant.

F. J. COLEMAN, District Judge.

Richard T. Wilson, Sr., died on November 26, 1910, leaving as part of his residuary estate the Commercial Building in New York City having a value at that time of $290,000. His son, Richard T. Wilson, Jr., who is the plaintiffs' testator, was one of the residuary legatees, and when the Commercial Building was sold in 1922 by the executors of the father's estate at a loss of $113,305.84, Richard T. Wilson, Jr., deducted his proportionate part of the loss, which is now conceded to be $22,660, from his total income reported for that year. The Commissioner of Internal Revenue disallowed the deduction and assessed an additional tax on account of it, which was paid under protest and is now sought to be recovered. If the deduction was proper, it is conceded plaintiff is entitled to recover $11,909.59 and $2,499.03 interest paid, together with interest on both amounts as provided by law.

The question presented is whether the residuary legatees under the father's will had the right to deduct from their individual incomes the loss sustained in the sale of the Commercial Building, or whether the deduction could only be made from the total income reported by the father's executors. Concededly the residuary legatees had the right to do so if the property was left to them directly and they became the holders of the legal title, subject to a mere power of sale in the executors; but the government contends that the property was given to the persons named as executors in trust for the residuary legatees. The plaintiffs deny that there was any trust and contend that even if there were one, its terms were such that the legatees became immediately entitled to the income and proceeds from the property and so had the right to deduct the loss in their individual returns.

The first problem is the construction of the father's will to determine whether the residuary estate was left in trust, and if so upon what terms. He left a net estate of approximately $16,000,000 consisting of various parcels of real estate valued at about $2,300,000 and personalty worth about $14,000,000. His general plan was to set up spendthrift trusts for each of his five children in the amount of $500,000 in some instances and of $1,000,000 in others, and to divide the residuum of the estate among them. He made a direct and express bequest of the trust funds to a named trustee, which was not one of the executors, and specified the terms of the trust, but as to the residuum he used the following words:

"All the rest, residue and remainder of my property, real, personal and of every kind and description, which I shall own at the time of my death, I direct my executors hereinafter named to sell and convert into personalty, and to divide the proceeds thereof into five equal parts which I give and bequeath as follows:

"(1) To my son Marshall Orme Wilson one of such parts to be his absolutely;

"(2) To my daughter, Mary R. Goelet one of such parts to be hers absolutely.

"(3) One of such parts to the amount of $500,000 I direct to be added to the trust fund of $500,000 created in and by the foregoing third Article of this will for the benefit of my son, Richard T. Wilson, Jr. and to be subject to the provisions of said Third Article, both as to the income therefrom and the disposition of the principal thereof, as if a part of said original trust fund; and the balance of such part I give and bequeath

to my said son, Richard T. Wilson, Jr. to be his absolutely."

Provisions similar to that for Richard T. Wilson, Jr., were made for the remaining two children.

The testator was concerned about the nature of his property which consisted of real estate and of the stock of manufacturing and business corporations. He desired to provide not only for its division among his children, but also for protection against its loss of value after his death. He, accordingly, directed that the spendthrift trusts be constituted out of securities which were not the stock of business or manufacturing corporations, and provided:

"As the balance of my residuary estate will largely consist of real estate in this and other States and shares of manufacturing and business corporations which should not be sold excepting under favorable conditions, I direct my said executors to hold and manage such remaining portion of my residuary estate until in their judgment it can from time to time be advantageously sold and disposed of, not exceeding however a period longer than the lives of my sons, Marshall Orme Wilson and Richard T. Wilson, Jr., and the survivor of them, and I hereby authorize and empower my said executors within said period, to sell, convey, assign and transfer the same, or any part thereof, at such time or times as they may deem for the best interests of my estate, and upon such terms and conditions as they may deem proper, including the terms and mode of payment therefor."

Furthermore, in regard to this balance of the residuum he authorized the executors in their discretion to organize a holding corporation and to retain its stock until in the judgment of the executors it could be advantageously disposed of, but not longer than the two specified lives in being. The executors, however, never organized such corporation.

The only other provisions which need be considered in detail read as follows:

"Upon any sale or disposition being made by my said executors of such portion of my residuary estate, or of any part thereof, or of the shares of the corporation which they are hereinbefore authorized to incorporate, or any part thereof, I authorize and empower my said executors if the proceeds, or any part thereof, may in their judgment be distributed among the persons entitled thereto hereunder without any detriment to their interests

to so distribute them forthwith; or in their discretion to retain the same, or any part thereof, for further conversion before distribution, not, however, beyond the period of the lives of my said sons and the survivor of them.

"During the period that my said executors shall hold such portion of my residuary estate of the shares of the corporation which they are hereinbefore authorized to incorporate, or any part thereof, they shall semi-annually pay over the net income thereof, or of such parts thereof as may be unsold or undistributed, to the persons to whom my residuary estate is bequeathed in and by the foregoing fourth article in the proportion of their respective interests."

Three executors were appointed, including two of the residuary legatees, and they were given power to vote all stock "held by them as such executors * * * and generally to have and exercise as to all such matters the powers of an individual owner who is under no trust obligation."

It thus appears that the testator did not expressly give the real property to anyone, but imperatively directed his executors to sell it within two lives in being. He did, however, make a present gift of the proceeds to his five children "absolutely." Pending the sale, which might in the discretion of the executors be long deferred (it was twelve years in the case of the Commercial Building), the executors were directed to "hold and manage" the property and to "semi-annually pay over the net income thereof" to the children. While there was no express provision to that effect, it must be held that the executors were empowered to collect the income and profits during the period they held and managed the property. Upon a sale they were authorized to distribute the proceeds forthwith or in their discretion to retain them "for further conversion before distribution," but not beyond the two lives, in the meanwhile distributing the net income from such proceeds semiannually.

It is clear that the testator did not have the specific idea of a trust in mind when making the provisions for his residuary estate. Even if the legal effect of these provisions was to create a trust, it is manifest that the testator did not in his own mind apply that name to the result. The will does create trusts in the usual form by expressly giving the trust funds to the trustee upon specified conditions; but in regard to the residuary the only words of gift are of the proceeds to

the children "absolutely," and the persons named as executors are never referred to as trustees.

It remains therefore to be determined whether the provisions necessitate a ruling that a trust of the residuary estate was created contrary to the testator's classification. It must be recognized that he had no desire to postpone the distribution of his residuary estate nor his children's absolute dominion over it. He intended that before distribution his realty should be converted to personalty, and, probably, that his stock of manufacturing and business corporations be turned into less speculative investments; and his purpose in making the various provisions which cause the present doubt was merely to give the executors such powers in the conversion and distribution that a sacrifice of value might be avoided, and to provide for the distribution of the income pending the distribution of the corpus. Defendant emphasizes the provision that the executors may retain the proceeds of any sale if in their judgment an immediate distribution would not be for the best interests of the legatees; but that retention was limited to the purpose of "further conversion before distribution."

I feel constrained to hold that the will created a residuary trust, whatever the testator's idea of the nomenclature may have been, because of the executor's control over the property and the income therefrom pending its sale and distribution; and that as to the real estate, the trust was valid under the New York Real Property Law (Consol. Laws, c. 50) § 96, subd. 2, as one to sell for the benefit of legatees. It is impossible for me to see any essential difference between the present case and Morse v. Morse, 85 N. Y. 53, which apparently has never been overruled or criticized and which establishes the law of New York upon the point.

Notwithstanding the existence of the trust, I believe the loss was deductible from the gross income of the beneficiaries. While it is true that under the federal statutes and regulations a trust estate and its beneficiaries are to some extent separate tax entities, in the present case the beneficiaries had so immediate an interest in the trust property that a loss of the latter may properly be held to have been suffered by them. They were the beneficial owners not only of the income, but of the corpus, and that ownership was unqualified and "absolute." They were entitled to a practically immediate distribution not only of the income, but of the proceeds of the sale of the real property subject only to the right of the executors to reserve such part of the proceeds as they thought should be further converted before distribution. Under the Revenue Act of 1921, § 219 (42 Stat. 246), the income was chargeable to the beneficiaries and the tax thereon payable by them even if there had been no distribution of it, because under the terms of the will the beneficiaries were entitled to a distribution. It is difficult to see why that principle should not apply to capital gains and losses where the same beneficiaries are entitled to a distribution of the corpus.

While the facts in Merle-Smith v. Commissioner (C. C. A.) 42 F.(2d) 837, are dissimilar to those of the present case, I think the sentiments therein expressed are applicable. The plaintiff here has real interest in the corpus and possesses every important attribute of ownership to even greater extent than the petitioner in that case. Munger v. Commissioner, 16 B. T. A. 168, and People ex rel. Field v. Gilchrist, 240 N. Y. 301, 148 N. E. 530, also tend to support this ruling. See, however, Klein's Federal Income Taxation, p. 1169 and its 1931 Supplement, p. 307.

Judgment is accordingly directed for the plaintiff in the sum of $14,408.62, with interest as provided by law and costs. Settle findings on notice.