**SMITH v. UNITED STATES.**

No. 3153.

District Court, S. D. West Virginia.

Dec. 15, 1936.

Hawthorne D. Battle and Robert S. Spilman, Jr., both of Charleston, W. Va., for petitioner.

Okey P. Keadle, of Huntington, W. Va. (Frank J. Wideman, of Washington, D. C., Andrew D. Shaw, Clarence E. Dawson, of Washington, D. C., George I. Neal, of Huntington, W. Va., and Warren A. Thornhill, Jr., of Beckley, W. Va., on the brief), for the United States.

McCLINTIC, District Judge.

This is a suit instituted under the Tucker Act (28 U.S.C.A. § 41(20) by Harrison B. Smith against the United States of America to recover the sum of $5,309.29,

with interest thereon at 6 per cent. from July 5, 1932, on account of the alleged overpayment of income and excess profits taxes for the year 1922. The two controversial issues remaining in the case are whether the amounts received by petitioner in 1922 paid pursuant to a contract with the Lasher Trustees dated December 15, 1896, and pursuant to a contract with William G. W. Iaeger dated October 7, 1898, constitute income in their entirety as found by the Commissioner of Internal Revenue, or were in part a return of capital as contended by petitioner.

There is no dispute as to the facts involved herein. It appears that about 1890 certain trustees, known as the Lasher Trustees, employed the law firm of Couch, Flournoy & Price, of Charleston, W. Va., to undertake the litigation necessary to perfect their title to about 36,750 acres of wild land in McDowell and Wyoming counties, West Virginia. The law firm was at that time composed of George S. Couch, S. L. Flournoy, and George E. Price. These attorneys immediately instituted actions against numerous adverse claimants of the title to this land. In 1896, after extensive and bitterly contested litigation, the basic title of the Lasher Trustees to these lands was established. The trustees, being unable to pay in cash the fee of $15,000 charged by said attorneys, entered into a contract with them under date of December 15, 1896, which provided that the firm of Couch, Flournoy & Price should continue to represent the Lasher Trustees in all suits and matters pertaining to said lands, and that for their services said attorneys should receive "10% of all sums which shall be hereafter received * * * in payment for damages or from leases or sales of the timber on or minerals in said lands and from leases and sales of said lands, or any part of them." Each of the members of said firm owned an undivided one-third of the 10 per cent. interest of the firm under said contract. After this contract was made, a great deal of litigation ensued involving numerous actions in ejectment, the settlement of squatters' claims, and other matters necessary to make marketable the title of the trustees to these lands. This litigation was substantially concluded and the title of the trustees to the property perfected at the time of Flournoy's death in the year 1904.

About 1897, Couch retired from the firm, and thereupon petitioner, Price, and Flournoy, formed the firm of Flournoy, Price & Smith. About the same time petitioner purchased from Couch his one-third interest in the contract of December 15, 1896.

The facts in regard to the Iaeger contract of October 7, 1898, are substantially like those relating to the contract with the Lasher Trustees. About 1896 the firm of Flournoy, Price & Smith was employed by William G. W. Iaeger to conduct the litigation necessary to clear up the title to a large tract of wild land in the Pocahontas coal field thought to contain some 157,000 acres, but which upon survey was found to contain about 57,000 acres. Protracted and bitterly contested litigation ensued between Iaeger, the owner of the senior patent, and numerous owners of junior patents, adverse claimants, and squatters. During this litigation Iaeger, being unable to pay reasonable attorneys' fees in cash, entered into a contract under date of October 7, 1898, whereby he employed said firm as his attorneys in suits affecting his lands, and agreed to give to said attorneys "as and in full of their compensation as such attorneys five per centum (5%) of the land to which the said party of the first part may be shown to have title within said survey * * * and also five per centum (5%) of any and all amounts which the said party of the first part may recover or be entitled to receive in any suit, compromise or settlement by way of damages, rents or royalties on account of his interest in said lands, or from sales or leases of said lands, or any part thereof, or of the sales of timber, coal or other minerals thereon and therein, the said five per centum of such damages, rents or royalties or said sales and leases to be paid to the parties of the second part as and when the same is payable to the said party of the first part from time to time."

Each of the members of the firm, i. e., S. L. Flournoy, George E. Price, and Harrison B. Smith, owned an undivided one-third interest in this contract.

Thereafter these lawyers conducted the litigation in connection with the title to this property, and successfully concluded it about 1903. Iaeger had died in the meantime, and Flournoy had qualified as the executor of his will. The latter died in 1904, whereupon the Kanawha Banking & Trust Company of Charleston, W. Va., was appointed administrator, cum testamenta

annexa, and was still acting as such at the time of the trial of this case.

Beginning about 1904 sales and leases of parts of the Iaeger and Lasher lands were consummated, and distributions made to petitioner pursuant to the terms of said contracts. After the date of the death of Flournoy in 1904, distributions on account of his one-third interest in the contracts were made to his devisee, Frances A. Flournoy, the widow of S. L. Flournoy, until her death early in the year 1922, and thereafter to the devisees under the will of Frances A. Flournoy. Several corporations were formed to take over a part of the Iaeger lands. In each instance petitioner was given outright one-third of 5 per cent. of the stock of such corporation. From time to time it was proposed to form a corporation to take over all the lands owned by the Lasher Trustees. Although no such plan was consummated, nevertheless in the consideration thereof it was always understood that petitioner, Price, and the owners of the Flournoy interest should receive 10 per cent. of the stock of such corporation.

In the year 1922 petitioner received the sum of $1,114.67 from the Lasher Trustees and the sum of $3,333.33 from the Kanawha Banking & Trust Company, administrator, c. t. a., of the estate of William G. W. Iaeger. The distribution made to petitioner by the Lasher Trustees represented his one-third of 10 per cent. of the proceeds of sales of timber and royalties from coal mined from the Lasher lands, and the distribution made to petitioner by the Kanawha Banking & Trust Company represented his one-third of 5 per cent. of the proceeds of the sale of certain of the Iaeger lands. The distributions of these amounts were in their entirety made in consideration of services rendered prior to March 1, 1913. The Commissioner of Internal Revenue found that both of these distributions were income to petitioner in the year 1922, and made a deficiency assessment thereon. Petitioner, having paid the ensuing tax, filed a claim for the refund thereof, and upon its denial instituted this suit.

The record shows the entire depletion allowance fixed by the Commissioner of Internal Revenue for the year 1922 on account of the sales of timber and mining of coal by the Lasher Trustees for said year. The other beneficiaries under said trust have received the benefit of their pro rata part of said depletion allowance. If petitioner is entitled to a deduction on account of his pro rata share of such depletion allowance, the amount thereof is shown to be $591.66. Likewise, the March 1, 1913, value of the Iaeger lands from which petitioner received a distribution in the year 1922, as fixed by the Commissioner of Internal Revenue, is shown. If petitioner is entitled to the return of his pro rata part of said March 1, 1913, value of said lands, the amount thereof is shown to be $1,971.27.

Petitioner seeks to sustain his claim to this deduction from the income received from the Lasher Trustees under the provisions of section 214(10) of the Revenue Act of 1921 (42 Stat. 241) found in the margin below.[1] His claim for said deduction from the income received from the Iaeger lands is based upon section 202 of

---

[1] "In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: Provided, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date: Provided further, That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter: And provided further, That such depletion allowance based on discovery value shall not exceed the net income, computed without allowance for depletion, from the property upon which the discovery is made, except where such net income so computed is less than the depletion allowance based on cost or fair market value as of March 1, 1913; such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee."

the Revenue Act of 1921 (42 Stat. 229) found in the margin below.[2]

■ Upon the foregoing findings of fact, the bottom question in this case is whether petitioner in the year 1922 had such interest as to entitle him to the deduction of his pro rata share of the March 1, 1913, value of the lands, whether the same were later sold, or whether the corpus thereof was depleted by mining and timber operations. I am of opinion petitioner is entitled to both the deductions claimed, based on the same principles.

In the recent case of Palmer v. Bender, 287 U.S. 551, 53 S,Ct. 225, 226, 77 L.Ed. 489, the Supreme Court of the United States laid down the rule, which has been followed in a great many cases decided by lower federal courts, that one who has "an economic interest" in land is entitled to a deduction for depletion under the Revenue Act of 1921 (42 Stat. 227). In this case Mr. Justice Stone said: "That the allowance for depletion is not made dependent upon the particular legal form of the taxpayer's interest in the property to be depleted was recognized by this Court in Lynch v. Alworth-Stephens Co., 267 U.S. 364, 45 S.Ct. 274, 69 L.Ed. 660. There a depletion allowance under section 12(a) of the 1916 act [September 8], 39 Stat. 767 [chap. 463], was claimed by a lessee of a mining lease, in the computation of tax on income from the proceeds of ore mined. The statute made no specific reference to lessees, and the government argued that, as the lessee acquired no ownership of the ore until the severance from the soil (see United States v. Biwabik Min. Co., 247 U.S. 116, 123, 38 S.Ct. 462, 62 L.Ed. 1017 [1020]), the lease gave him no depletable interest in the ore in place. But this Court held that, regardless of the technical ownership of the ore before severance, the taxpayer, by his lease, had acquired legal control of a *valuable economic interest* in the ore capable of realization as gross income by the exercise of his mining rights under the lease. Depletion was therefore allowed." See, also, Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383.

In the case of Commissioner of Internal Revenue v. Molter (C.C.A. 10) 60 F.(2d) 498, 499, the owner of an equitable interest in land was held entitled to depletion. The first point in the syllabus of this case is: "Depletion allowances are not confined to fee owner, but are made to those who have property right or interest in substance depleted."

In Merle-Smith v. Commissioner (C.C. A. 2) 42 F.(2d) 837, 840, the court allowed depletion to the beneficiaries of a certain trust, saying in its opinion: "The government accedes to the doctrine that in all mining operations there is some depletion. But whose ore is depleted is put into question. If the petitioners have any property interest in the corpus, it is being depleted. Certainly, they who receive the income, the title owners of the corpus of the trust, the trustees, might have a depletion allowance. These petitioners who have the property right to which we have referred, receive the royalties without deduction. The statutes provide for depletion. The trustees merely pass on the royalties received in the percentages the will requires of them. The terms of the trust require that the entire royalties be paid currently to the beneficiaries. No depletion reserve was to be set aside or retained by the trustees."

Again in the case of Hurley v. United States (D.C.Okl.) 10 F.Supp. 365, the court held, in the fifth point of the syllabus: "In determining who is entitled to allowance for depletion of mines, or oil and gas wells, courts do not concern themselves with niceties of legal title, but include within statute those having right to share in minerals produced and an economic interest in the minerals in place (Revenue Acts 1918, 1921, § 234(a) (9)."

See, also, Lynch v. Alworth-Stephens Co., 267 U.S. 364, 365, 45 S.Ct. 274, 69 L.Ed. 660; Reynolds v. Cooper (C.C. A. 10) 64 F.(2d) 644; Signal Gasoline Corporation v. Commissioner (C.C.A. 9) 66 F.(2d) 886; Klein Federal Income Taxation (1929) 685, 691.

It seems clear that petitioner on March 1, 1913, had an "economic interest" in the

---

[2] "(b) The basis for ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, acquired before March 1, 1913, shall be the same as that provided by subdivision (a) [its actual cost]; but—

"(1) If its fair market price or value as of March 1, 1913, is in excess of such basis, the gain to be included in the gross income shall be the excess of the amount realized therefor over such fair market price or value."

so-called Lasher lands and the so-called Iaeger lands.

This conclusion is based on the terms of the contracts under which petitioner received the distributions in the year 1922, and the construction given to such contracts by the parties for a period of approximately twenty-five years, as evidenced by the payment of one-third of the distributions made from time to time to the owners of the Flournoy interest after the death of the latter in the year 1904, the pro rata distribution of stock in corporations formed to take over a portion of the lands affected by these contracts, and the recognition of the validity of the assignment to petitioner of Couch's interest in the contract with the Lasher Trustees.

The contention of respondent that the distributions made to petitioner in the year 1922 were in consideration of current services is rebutted by the uncontradicted testimony that the services required to be performed under said contracts were substantially completed by the year 1903 when the titles to said lands were perfected and made marketable. It is further shown conclusively that these distributions were in consideration for services, rendered prior to March 1, 1913. Certainly if the distributions were for current services a one-third part thereof would not have been paid to the owners of the Flournoy interest, since the latter died in the year 1904.

I am accordingly of opinion that petitioner, in the computation of his income tax for the year 1922, is entitled to the deduction of the sum of $561.66 out of the distribution to him of the sum of $1,114.67 made by the Lasher Trustees, and to the deduction of the sum of $1,971.27 out 'of the distribution of $3,333.33 made to him by the Kanawha Banking & Trust Company, administrator c. t. a. of the estate of William G. W. Iaeger.

Two other issues presented by the pleadings have been taken care of by stipulations. In stipulation No. 2 it was agreed that petitioner is entitled to a refund of the income taxes assessed and paid by him in the year 1922 resulting from the erroneous inclusion in his income of the sum of $4,351.23 received from Duke W. Hill, trustee of the Rothwell Lease Trust. It was further stipulated that petitioner waives his claim for additional deduction relating to the taxability to him of dividends received in the year 1922 from certain stock in the Kanawha Banking & Trust Company.

Pursuant to the stipulation of the parties, no calculation of the amount which the petitioner is entitled to recover was introduced in evidence, it being agreed that when the opinion of the court was rendered the petitioner and the respondent would file with the court statements showing the calculation of the judgment recoverable by the petitioner, upon consideration of which the court would enter judgment for the petitioner in the amount deemed proper by it. In view of this stipulation, the court directs the petitioner and respondent to file with it statements showing a calculation of the judgment recoverable by petitioner within thirty days from the date hereof.