*Decision will be entered under Rule 155.*

MAYO HOLBROOK AND VERNA HOLBROOK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1261-74.     Filed November 26, 1975.

*William H. Beck,* for the petitioners.
*Robert P. Ruwe,* for the respondent.

418

OPINION

Section 611(a) provides that in the case of mines there shall be permitted as a deduction in computing taxable income a reasonable allowance for depletion according to the peculiar conditions of each case. Section 613 provides that the depletion allowance in the case of coal shall be 10 percent of the gross income from the property (defined as the gross income from mining, sec. 613(c)), excluding amounts paid as royalties by the taxpayer in respect of the property. The theory of the deduction is that "extraction of minerals gradually exhausts the capital investment in the mineral deposit," and the allowance "is designed to permit a recoupment of the owner's capital investment in the minerals so that when the minerals are exhausted, the owner's capital is

unimpaired," *Commissioner v. Southwest Expl. Co.,* 350 U.S. 308, 312 (1956). See *Parsons v. Smith,* 359 U.S. 215, 220 (1959).

The touchstone for determining eligibility for the depletion allowance is the ownership of an "economic interest" in the minerals in place. The rule for determining who has an "economic interest" in the minerals in place has been crystallized in section 1.611-1(b)(1), Income Tax Regs., as follows:

Annual depletion deductions are allowed only to the owner of an economic interest in mineral deposits * * *. An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place * * * and secures, by any form of legal relationship, income derived from the extraction of the mineral * * * to which he must look for a return of his capital. * * * A person who has no capital investment in the mineral deposit * * * does not possess an economic interest merely because through a contractual relation he possesses a mere economic or pecuniary advantage derived from production. * * *

This regulation boils down to two tests for identifying an economic interest: (1) A capital investment in the mineral in place, and (2) a return on the investment which is realized solely from the extraction of the mineral. There must exist some element of "ownership" in the mineral deposit "in place" *and* a right to share in the income from its production. The mineral deposit "in place" must be a reservoir of the taxpayer's capital investment, and that reservoir must be depleted through production. *Lynch v. Alworth Stephens Co.,* 267 U.S. 364, 370-371 (1925); *Kohinoor Coal Co. v. Commissioner,* 171 F.2d 880, 883 (3d Cir. 1948), affg. a Memorandum Opinion of this Court, cert. denied 337 U.S. 924 (1949). The application of these principles "depends upon the totality of the facts of each case." *Ramey v. Commissioner,* 398 F.2d 478, 479 (6th Cir. 1968), affg. 47 T.C. 363 (1967).

We do not think petitioners "acquired by investment any interest in mineral in place" within the meaning of this regulation. The only right petitioners acquired was a non-exclusive and nontransferable license, terminable on 10 days' notice. Kentucky River did not give up any capital interest in the coal in place but, under the license, retained "the right to use or. grant to others the joint use" of the "surface and/or mining rights." Kentucky River could terminate the license at its "pleasure" by "giving to the Licensee [i.e., petitioners] Ten Days

written notice in person, or by mail, or by posting the same at any mine portal or opening on the premises."

Where a license, such as the one granted petitioners by Kentucky River, permitting a licensee to mine coal is nontransferable, is nonexclusive, and is terminable at will on short notice, the owner has given up none of his capital interest in the coal in place. The owner, without cause, can stop the licensee's operations at any time he wishes to do so. He can mine the coal himself. He can permit others to mine coal from the same property, with or without a termination of the licensee's mining rights. The owner thus retains complete control over, and ownership of, the coal in place and the price he will require others to pay for the privilege of mining it. Such a license does not convey "any interest" in the coal "in place" but, in the words of the regulation, transfers "a mere economic or pecuniary advantage" to be "derived from production." *Whitmer v. Commissioner,* 443 F.2d 170, 172 (3d Cir. 1971), affg. a Memorandum Opinion of this Court; *United States v. Wade,* 381 F.2d 345, 350-351 (5th Cir. 1967); *United States v. Stallard,* 273 F.2d 847, 851 (4th Cir. 1959); *Charles P. Mullins,* 48 T.C. 571, 582 (1967); see generally *Paragon Coal Co. v. Commissioner,* 380 U.S. 624, 633-634 (1965); *Parsons v. Smith,* 359 U.S. 215, 224 (1959).

Moreover, petitioners did not make any "investment" in the minerals "in place." The only investment petitioners had in the mining operation was their equipment and roof supports and all, or nearly all, of these items were movable.[3] That investment was recoverable and was recovered through depreciation, and all the rest of petitioners' outlays were recovered through current expense deductions. See *Paragon Coal Co. v. Commissioner, supra; Parsons v. Smith, supra; Lesta Ramey,* 47 T.C. at 373-374. The nonexclusive character of the license and its terminability by either party on short notice without cause

---

[3] On brief petitioners assert they paid $16,000 to a Mr. Proffit for the purchase of the Kentucky River license. However, Holbrook first testified that he paid the prior "owner" of the mine $16,000 for a "joy" loader, and on their joint income tax return for 1970 petitioners show two items acquired in 1967 (when they were granted license No. 145) in the respective amounts of $15,494.86 and $2,300. In response to later leading questions, Holbrook gave testimony which could be interpreted to mean that he paid $16,000 for the license, but at one point Holbrook interrupted a colloquy of counsel to say the payment was for the "lease and the loader both." No documentation of the transaction was introduced. The license here in issue was granted by Kentucky River to Verna T. Holbrook without any reference to a prior owner, and it expressly provides that it "is personal to the Licensee and is in all respects non-transferrable." We are not satisfied petitioners paid anything for the license as such.

refutes any contention that petitioners' obligations under the license constituted a capital investment for which an economic interest was acquired.

It is true that the coal, after it was mined, belonged to petitioners and that they were free to sell it to others at any price they could negotiate. But they had no interest in the coal "in place." Until the coal was mined and reduced to petitioners' possession, it belonged to Kentucky River. For each ton they mined, petitioners paid Kentucky River an agreed price, referred to in the license agreement as a royalty, and to secure the payment of that price Kentucky River reserved a lien on all coal mined and not previously sold and upon all equipment and improvements placed upon the property. In no sense do these provisions confer on petitioners an economic interest in the coal in place.

The facts in *Winters Coal Co. v. Commissioner,* 496 F.2d 995 (5th Cir. 1974), revg. 57 T.C. 249 (1971), relied upon by petitioners, are distinguishable. In that case, the court held that a lease of coal lands, which was terminable on 30 days' notice, conveyed an economic interest in the coal in place, but the lease required the lessee to obtain rights from the owner of the surface rights before the lease could become effective. Citing *Commissioner v. Southwest Expl. Co., supra,* the court emphasized (496 F.2d at 998) that the surface-rights-ownership requirement was crucial to its holding. Indeed, the opinion indicates that, absent that requirement, the majority would have concluded that the taxpayer did not have an economic interest in the minerals in place because of the short term of the lease and the cancellation clause.[4] In the instant case, the "Licensor reserves the right to use or grant to others the joint use" of the surface rights.

We conclude petitioners are not entitled to the disputed depletion allowance.

*Decision will be entered for the respondent.*

---

[4] Also distinguishable on its facts is *Bakertown Coal Co. v. United States,* 202 Ct. Cl. 842, 485 F.2d 633 (1973), where the taxpayer had a valid mineral lease which, though subject to termination, granted the taxpayer exclusive rights which were fully effective until terminated.