**MISSOURI RIVER SAND COMPANY, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 84–2560.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1985.

Decided Oct. 10, 1985.

---

Charles W. German, Kansas City, Mo., for appellant.

Francis M. Allegra, Washington, D.C., for appellee.

Before ROSS and ARNOLD, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

ROSS, Circuit Judge.

Missouri River Sand Company (Missouri River Sand) claimed a tax deduction for depletion of sand and gravel deposits located near its processing facilities. The Commissioner of Internal Revenue (Commissioner) disallowed the deduction and the United States Tax Court[1] held that the disallowance was proper since Missouri River Sand did not have an economic interest in the sand and gravel deposits. We affirm.

Missouri River Sand is a commercial sand-dredging company that has processing facilities in two locations on the Missouri River, one near Boonville and the other near Rocheport, both in the State of Missouri. Missouri River Sand owns the riparian land near Boonville and leases the land near Rocheport from its sole shareholder.

Missouri River Sand operates a dredge boat between its Boonville and Rocheport locations. Sand and gravel are dredged from a stretch of the river approximately three quarters of a mile upriver from its Rocheport facility and from an area approximately 200 yards upriver from its Boonville site.

In Missouri, title to the bed of navigable waters[2] is held by the state, but the right to dredge materials is a public right and minerals removed from these waters become the personal property of the persons extracting them. Regulation and control of river traffic is, however, under authority of the federal government. The Department of the Army Corps of Engineers issues permits to producers conducting dredging operations on the river and prescribes the areas within which producers may dredge. The permits do not, however, convey any property rights. In the 1975 and 1976 tax years, Missouri River Sand had permits to dredge near Rocheport (river mile 186.3) and near Boonville (river mile 196.5). Although other dredgers had

1. The Honorable Darrell D. Wiles, Judge, United States Tax Court, presiding.

2. The Missouri River is considered navigable under The Rivers and Harbors Act of 1899, § 10, 33 U.S.C. § 403 (1982); *Montana Power Co. v. Federal Power Comm'n,* 185 F.2d 491, 496 (D.C.Cir.1950).

permits to dredge deposits in the same areas in previous tax years, no other dredgers held permits between river miles 186 and 188 near Rocheport or 196 and 198 near Boonville in the tax years in question.

Missouri River Sand is a "commercial dredger." Dredging operators known as "contract dredgers" also operate on the Missouri River. Contract dredgers do not require a permanent processing and unloading site but instead process sand by use of a "dock barge," a floating plant that processes dredged sand prior to unloading at a temporary site on the river bank. Thereafter, sand and gravel are hauled to a construction site. Ray Bollken of Capital Sand Company testified that existence of access roads was an important consideration to a contract dredger and that access roads existed near both Boonville and Rocheport which could be used for the transportation of sand and gravel dredged from deposits in these areas.

Missouri River Sand filed timely tax returns for the fiscal years ending March 31, 1975 and March 31, 1976. The Commissioner denied Missouri River Sand's claimed deductions for depletion under I.R.C. § 611(a) and determined deficiencies in the amounts of $3,876.36 and $4,478.07, respectively. Missouri River Sand thereupon filed this action in the tax court.

The tax court found that in the areas surrounding Missouri River Sand's operations the river was freely navigated by significant commercial traffic. It further found that, although there were no permanent sites suitable for profitable dredging of the deposits adjacent to Missouri River Sand's facilities, land adjacent to the facilities was sufficient for temporary storage of sand and gravel by contract dredgers. Thus, the tax court concluded that Missouri River Sand did not have an economic interest in the sand and gravel deposits in question and, accordingly, held that Missouri River Sand was not entitled to a depletion deduction.[3]

3. *Missouri River Sand Co. v. Comm'r*, 83 T.C.

## DISCUSSION

Section 611(a) of the Internal Revenue Code provides in pertinent part:

**(a) General Rule.**

In the case of * * * natural deposits * * *, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion * * *, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary.

I.R.C. § 611(a). Pursuant to I.R.C. § 611(a), the Secretary of the Treasury promulgated Treas.Reg. 1.611–1(b), which provides as follows:

(b) *Economic Interest.* (1) Annual depletion deductions are allowed only to the owner of an economic interest in mineral deposits * * *. An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place * * * and secures, by any form of legal relationship, income derived from the extraction of the mineral * * *, to which he must look for a return of his capital. * * * A person who has no capital investment in the mineral deposit * * * does not possess an economic interest merely because through a contractual relation he possesses a mere economic or pecuniary advantage derived from production.

*Id. See also Helvering v. Bankline Oil Co.*, 303 U.S. 362, 367, 58 S.Ct. 616, 618, 82 L.Ed. 897 (1938).

The Supreme Court discussed the economic interest requirement in *Commissioner v. Southwest Exploration Co.*, 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956). In *Southwest Exploration*, landowners and their lessees (Southwest) each sought a deduction for depletion of offshore oil. State law provided that the state's offshore oil could be extracted from wells drilled on filled land or slant drilled from upland drill sites. In discussing the "economic interest" requirement as it related to the landowners the Court stated:

193, 201 (1985).

Southwest contends that the upland owners here contributed merely property which was useful but not necessary to the drilling operation. The facts are to the contrary. * * * *The fact is that the * * * oil [was] produced in the only way that it could have been, consistent with state law and the express requirements of the state's lease.*

* * * [P]roceed[ing] to the question of whether the upland owners had * * * an economic interest here[,] [w]e find that they did. * * * [T]he upland owners [were] *essential* parties to *any* drilling operations.

\* \* \* \* \* \*

We decide only that where, in the circumstances of this case, a party *essential* to the drilling for and extraction of oil has made an *indispensable* contribution of the use of real property adjacent to the oil deposits in return for a share in the net profits from the production of oil, that party has an economic interest which entitles him to depletion on the income thus received.

*Id.* at 315–17, 76 S.Ct. at 399–400 (emphasis added).

■ We agree with the tax court that *Southwest Exploration* is distinguishable from the instant case on its facts. Unlike *Southwest Exploration,* sand and gravel located adjacent to Missouri River Sand's facilities were not removed "in the only way that it could have been" under the law because, as the tax court found, nothing prevented other producers, such as contract dredgers, from extracting these deposits at any time. *Id.* Thus, Missouri River Sand was not "essential" to "any" dredging of these deposits and, accordingly, did not hold an economic interest in them.

Missouri River Sand argues that the tax court did not make a specific factual finding that contract dredgers could "profitably" dredge in the areas adjacent to its facilities. We disagree. The tax court held:

In the instant case, petitioner *does not have exclusive* physical and *economic*

*control of the sand and gravel adjacent to its riparian properties.* Under these circumstances, it is possible that another operator could dredge materials from the deposits adjacent to petitioner's facilities with impunity.

\* \* \* \* \* \*

The *economic reality* is that without physical control over the deposits, petitioner could lose its sole source of the material to which it must look for income to a competing dredger * * *.

*Id.* at 201–02 (emphasis added).

■ Implicit in the tax court's holding is the finding that other dredgers could "economically" dredge in the sections of the river adjacent to Missouri River Sand's facilities. While the tax court's findings could have been more detailed and direct, they will be liberally construed to be in consonance with the judgment if the judgment has support in the record evidence. *In re Fossum,* 764 F.2d 520, 522 (8th Cir. 1985). In the instant case, there is evidence in the record which indicates that contract dredgers could economically dredge in this area.

Missouri River Sand further argues that two prior tax court cases, *Oil City Sand and Gravel Co. v. Commissioner,* 32 T.C. 31 (1959) and *Victory Sand and Concrete, Inc. v. Commissioner,* 61 T.C. 407 (1974), compel a decision in its favor. The tax court found these cases distinguishable on the basis that the taxpayers there had "total control over production of the mineral", whereas Missouri River Sand had no such control over the sand and gravel deposits adjacent to its facilities. 83 T.C. at 201. We find this distinction persuasive. Accordingly, the decision of the tax court is affirmed.