T.C. Memo. 2002-128

UNITED STATES TAX COURT

JAMES S. & DENISE D. GOODFELLOW, DANIEL R. & CLAUDIA
GOODFELLOW, JAMES B. & NANCY B. GOODFELLOW, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8469-00.                    Filed May 28, 2002.

<u>Lowell V. Ruen</u>, for petitioners.

<u>Robert S. Scarbrough</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  This case is before the Court for decision
without trial.  See Rule 122.  Petitioners petitioned the Court
to redetermine deficiencies in their 1995 and 1996 Federal income
taxes.  Respondent determined the following deficiencies, all of

which stem from respondent's disallowance of depletion deductions claimed by an S corporation named Goodfellow Bros. Inc. (GBI):

|  | 1995 | 1996 |
|---|---|---|
| James S. and Denise D. Goodfellow | $69,594 | $28,546 |
| Daniel R. and Claudia Goodfellow | 57,887 | 23,729 |
| James B. and Nancy B. Goodfellow | —0— | 2,858 |

We decide herein whether GBI had the requisite economic interest in certain unusable materials to deduct depletion under section 611. We hold it did not. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the subject years. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

All facts were stipulated. We incorporate herein by this reference the parties' stipulation of facts and the accompanying exhibits. Petitioners resided in Wenatchee, Washington, when their petition was filed.

James S. Goodfellow, Daniel R. Goodfellow, and James B. Goodfellow (collectively, shareholders) own all of GBI's stock. Their respective ownership interests are 53.5 percent, 44.5 percent, and 2 percent. GBI's primary business activity is excavating and grading land. GBI works primarily as a general contractor but works sometimes, including on all occasions relevant herein, as a subcontractor.

In 1995 and 1996, GBI performed services for subdivisions of the State of Hawaii and others (collectively, landowners) under which it excavated and graded the landowners' land for future construction. GBI performed these services directly for general contractors, who, in turn, had contracted with the landowners. GBI's contracts with the general contractors generally required it to excavate materials from specified job sites (sites) and to grade the sites in accordance with certain specifications. GBI's grading services included using "fill". GBI was required by the contracts to use as fill any "usable" materials which were present on the site. When not enough usable materials were present on the site, the contracts required GBI to supply additional fill at its own expense.

Materials were considered usable if they met certain specifications. An engineer employed by the landowners examined the materials after their excavation and ascertained whether the materials met the specifications. Materials which the engineer rejected as not meeting the specifications were characterized as "unusable" and had to be removed from the site at GBI's expense. When GBI agreed to perform the relevant services at a site, it did not know (either actually or by estimate) the amount of materials at the site which would be considered usable or unusable.

Materials on the site which the engineer characterized as unusable became the property of GBI at or after the time of that characterization. GBI removed the unusable materials from the sites at its own expense and crushed and sold the removed materials to third parties as crushed rock. GBI crushed the unusable materials using equipment that it owned and maintained at a rock quarry (quarry) that was located on land owned by GBI. GBI used that equipment primarily to crush rock obtained from the quarry. For Federal income tax purposes, GBI depreciated the equipment in the subject years as well as in prior years.

GBI calculated and claimed percentage depletion deductions of $330,082 and $140,660 for 1995 and 1996, respectively, which passed through and were reported by the shareholders on their individual Federal income tax returns. GBI's deductions reflected its sale of both the unusable materials and the materials obtained from the quarry. Respondent disallowed GBI's deductions to the extent that they were attributable to the unusable materials. Respondent determined with respect to the unusable materials that GBI lacked an economic interest in a mineral in place.

## OPINION

Respondent determined that petitioners are not entitled to the depletion deductions which GBI claimed as to the unusable materials. Petitioners argue that GBI is entitled to those

deductions because it had an economic interest in the unusable materials.[1]  Petitioners rely on the 7-factor test set forth in Parsons v. Smith, 359 U.S. 215 (1959).  Respondent argues that petitioners lacked an economic interest in the unusable materials.  Respondent asserts that the Parsons test supports his argument.

We agree with respondent that GBI is not (and thus petitioners are not) entitled to deduct depletion with respect to the unusable materials.  Petitioners, as shareholders of GBI, an S corporation, are permitted to take into account their pro rata shares of GBI's "items of income * * *, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and * * * nonseparately computed income or loss."  Sec. 1366(a)(1).  GBI claimed the depletion deductions as to its excavation activities, and petitioners, in turn, claimed the depletion deductions through the passthrough provision of section 1366(a)(1).  A deduction for depletion is a matter of legislative grace, Parsons v. Smith, supra at 219, and petitioners bear the burden of proving that they are entitled to such a deduction.[2]  Rule 142(a)(1); INDOPCO, Inc. v.

_____

[1] Petitioners make no assertion that GBI also had an economic interest in the usable materials.

[2] The parties agree that sec. 7491(a), which places the burden of proof on respondent in certain cases, does not apply here.  Sec. 7491 applies only to court proceedings arising from
(continued...)

Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The fact that the parties submitted this case to the Court fully stipulated does not change or otherwise lessen petitioners' burden in this case. Rule 122(b); Kitch v. Commissioner, 104 T.C. 1, 8 (1995), affd. 103 F.3d 104 (10th Cir. 1996).

Section 611(a) provides that a taxpayer may deduct a reasonable allowance for depletion as to "mines, oil and gas wells, other natural deposits, and timber", such allowance being ascertained under regulations prescribed by the Secretary. As relevant herein, the applicable regulations, the relevant portion of which we set forth in the appendix to this opinion, clarify that a depletion deduction may be claimed only by the taxpayer with an economic interest in the depleted mineral deposit. Sec. 1.611-1(b)(1), Income Tax Regs.; see also Parsons v. Smith, supra at 226; Kirby Petroleum Co. v. Commissioner, 326 U.S. 599, 603 (1946); Helvering v. Bankline Oil Co., 303 U.S. 362, 368 (1938). The regulations explain that an economic interest is present when the taxpayer has: (1) Acquired by investment an interest in mineral deposits embedded within the earth (i.e., minerals in place) and (2) secured, by any form of legal relationship, income

---

[2](...continued)
examinations commencing after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

derived from the extraction of the minerals to which the taxpayer must look for a return of capital. Sec. 1.611-1(b)(1), (d)(4), Income Tax Regs.; see also Commissioner v. Southwest Exploration Co., 350 U.S. 308, 313-314 (1956); Palmer v. Bender, 287 U.S. 551 (1933). Depletion deductions serve to compensate a taxpayer for minerals consumed in the production of income resulting from extraction, Anderson v. Helvering, 310 U.S. 404, 408 (1940), so that when the minerals are exhausted, the taxpayer's investment in the mineral deposit remains unimpaired, Paragon Jewel Coal Co. v. Commissioner, 380 U.S. 624 (1965). Commissioner v. Southwest Exploration Co., supra; Mo. River Sand Co. v. Commissioner, 83 T.C. 193, 198 (1984), affd. 774 F.2d 334 (8th Cir. 1985). Whether the taxpayer has the requisite economic interest in a depletable asset is a factual determination. Ramey v. Commissioner, 398 F.2d 478, 479 (6th Cir. 1968), affg. 47 T.C. 363 (1967).

The regulations recognize two methods for computing an allowance for depletion as to mineral deposits. Sec. 1.611-1(a), Income Tax Regs. The first method, cost depletion under section 612, focuses on the property's adjusted basis. Id. The second method, percentage depletion under section 613, focuses on the property's gross income. Id. Percentage depletion, the method at issue here, "is not computed with reference to the [taxpayer] operator's investment" and does not limit the taxpayer's

deduction to the amount of any investment.  <u>United States v. Swank</u>, 451 U.S. 571, 576 (1981).  Percentage depletion deductions continue as long as minerals are extracted from the property, and even where a taxpayer has invested no money in the deposit.  <u>Id.</u> at 576-577.  Nor must the taxpayer claiming percentage depletion as to a mineral deposit have legal title over the deposit.  <u>Kirby Petroleum Co. v. Commissioner</u>, <u>supra</u>; <u>Lynch v. Alworth-Stephens Co.</u>, 267 U.S. 364 (1925).  The linchpin of a percentage depletion deduction is that the taxpayer has an economic interest in the mineral deposit for which the deduction is claimed.  <u>Commissioner v. Southwest Exploration Co.</u>, <u>supra</u>; <u>Kirby Petroleum Co. v. Commissioner</u>, <u>supra</u> at 603.

Here, we find that GBI never had the requisite economic interest in the minerals (unusable materials) in place.  GBI neither purchased by investment, nor contracted for, any interest in those materials as they sat embedded in the ground.  GBI received the materials only after they were rejected by the landowners' engineer following the materials' excavation from the ground.  GBI's receipt of the unusable materials at that time resulted from its contractual obligation to dispose of minerals once owned and now abandoned by the landowners, rather than from its purchase of minerals from the landowners.[3]

---

[3] We express no opinion as to whether we would have decided this case differently had the landowners agreed to sell to GBI an
(continued...)

Nor did GBI secure through a legal relationship income derived from the extraction of the unusable materials to which it looked for a return of capital. The Supreme Court has repeatedly stated as to this requirement that it is met only where a taxpayer looks solely to recover capital invested in a mineral deposit through an extraction of that deposit. Paragon Jewel Coal Co. v. Commissioner, supra at 635, 638; Commissioner v. Southwest Exploration Co., supra at 314; Kirby Petroleum Co. v. Commissioner, supra at 603-604. GBI failed this requirement in that it received from the landowners substantial remuneration for the excavation and grading services it performed under the contracts and did not look solely to recover any capital invested in the unusable materials from an extraction of those materials. Nor under the contracts did GBI receive the unusable materials as compensation for services. Although GBI did in fact realize income on its sale of the unusable materials, that income was independent of and merely incidental to GBI's performance of services under the contracts. Such an economic advantage obtained from the contracts does not constitute an economic

---

[3](...continued)
ascertainable amount of the embedded materials as part of the excavation project. The facts of this case establish clearly that GBI had no understanding of the amount, if any, of the unusable materials that it would acquire as part of its contracts with the landowners. Nor do the facts persuade us that GBI had agreed to buy any of the unusable materials or that it had depended on its sale of the unusable materials to recover any of its capital expended on the excavation project.

interest in the unusable materials.  <u>Paragon Jewel Coal Co. v. Commissioner</u>, <u>supra</u> at 634-635; <u>Parsons v. Smith</u>, 359 U.S. at 224; <u>Helvering v. O'Donnell</u>, 303 U.S. 370, 372 (1938); <u>Helvering v. Bankline Oil Co.</u>, 303 U.S. at 367-368.  As the regulations provide as to this matter, a taxpayer who has no capital investment in a mineral deposit does not possess an economic interest in the deposit merely because, through a contractual relation, the taxpayer obtains an economic or pecuniary advantage through the production of the deposit.  Sec. 1.611-1(b)(1), Income Tax Regs.; see also <u>Helvering v. Bankline Oil Co.</u>, <u>supra</u> at 367 ("the phrase 'economic interest' is not to be taken as embracing a mere economic advantage derived from production, through a contractual relation to the owner, by one who has no capital investment in the mineral deposit."); cf. <u>Holbrook v. Commissioner</u>, 65 T.C. 415, 419 (1975) (presence of an economic interest does not necessarily require a monetary investment in the mineral deposit in place but requires an element of ownership in the minerals in place and a right to share in the income from their production).

Petitioners argue that GBI possessed an economic interest in the unusable materials under the rationale set forth by the Supreme Court in <u>Parsons v. Smith</u>, 359 U.S. 215 (1959).  We disagree.  In <u>Parsons</u>, the taxpayers were paid by the owners of coal-bearing land (owners) to strip mine the land and to deliver

the coal to the owners. The taxpayers argued that they were entitled to deduct depletion in connection with these payments because they had a capital investment in minerals (coal) in place. The taxpayers argued that their capital investment was in the equipment, facilities, and labor which they expended to mine the coal. The Supreme Court disagreed. The Court held that the taxpayers lacked an economic interest in the coal. The Court noted first that the taxpayers lacked any interest or investment in the coal apart from any interest held under the mining contracts. The Court then stated that the contracts gave the taxpayers merely an economic advantage from the strip mining operation. The Court viewed the following seven factors as relevant to its decision: (1) The taxpayers' investment was in their equipment, all of which was movable, and they lacked an investment in the coal in place; (2) the taxpayers recovered their investment in the equipment through depreciation; (3) the taxpayers' contracts with the owners were terminable without cause on short notice; (4) the owners never agreed to surrender, nor did they ever surrender, to the taxpayers an interest in the coal in place; (5) title to the coal always vested in the owners, and the taxpayers were not allowed to sell or keep any of the coal but had to deliver it to the owners; (6) the taxpayers received none of the proceeds from the coal's sale but were paid for their services a set amount for each ton of coal mined and

delivered; and (7) the taxpayers agreed to look solely to the owners for all amounts due under the contracts.  Accord Paragon Jewel Coal Co. v. Commissioner, 380 U.S. 624 (1965) (where the Court applied these seven factors to decide that certain coal mining contracts did not give the contract miners an economic interest in the coal in place).

Our analysis of these factors in the light of the setting at hand leads to a conclusion contrary to that desired by petitioners.  As to the first two factors, petitioners observe that GBI incurred costs to remove, transport, store, and crush the unusable materials.  Petitioners argue that the costs which GBI incurred to remove the unusable materials constituted an investment in those materials that was more proprietary and meaningful than the investment made by the taxpayers in Parsons v. Smith, supra.  We disagree.  As was true in Parsons, GBI's sole tangible investment was in movable equipment, and GBI recovered that investment through depreciation.  Whereas petitioners focus primarily on GBI's labor and other nontangible property costs in arguing that GBI's investment was more proprietary and meaningful than the investment made by the taxpayers in Parsons, the fact of the matter is that the taxpayers in Parsons incurred similar nontangible property (labor) costs.  The Supreme Court did not find that those labor costs in Parsons constituted an economic interest in the coal,

and we do not consider the similar costs here to give GBI an economic interest in the unusable materials.  These two factors favor respondent.

The third factor favors petitioners.  Unlike the contracts in Parsons, GBI's contracts were not terminable at will.  GBI's contracts required GBI to perform its services within a set period of time and provided that GBI was liable for liquidated damages in the event of a breach.  Under the facts at hand, however, the probative value of this third factor is minimal given our conclusion supra that the first two factors favor respondent and our conclusion infra that the remaining four factors also favor respondent.

As to the fourth factor, petitioners focus on the fact that the owners in Parsons never surrendered to the taxpayers an interest in the minerals at issue there.  Here, petitioners observe, GBI obtained title over the unusable materials when they were declared as such by the engineer.  Petitioners assert that the fact that GBI had to dispose of the unusable materials also evidences its economic interest in those materials.  Petitioners conclude that this factor favors them.  We disagree.  Under the applicable regulations, petitioners' focus should properly be placed on any interest that GBI had in the unusable materials when the materials were embedded in the ground.  Sec. 1.611-1(b)(1), Income Tax Regs.  Contrary to petitioners'

assertion, the mere fact that GBI had to remove and dispose of the unusable materials does not necessarily mean that the landowners surrendered an interest in those materials when they were in place.  In fact, given that the materials were only characterized as unusable after they were inspected by the engineer following excavation, we conclude to the contrary that all interests in the unusable materials which the landowners surrendered to GBI were in materials not in place.  This factor favors respondent.

As to the fifth factor, petitioners observe that the taxpayers in Parsons could not keep or sell any of the coal but were required to deliver it all to the owners.  Petitioners conclude that this factor favors them because, they claim, GBI never delivered the unusable materials to the landowners.  We disagree with petitioners' conclusion.  Contrary to their assertion, GBI was required to and did in fact deliver the unusable materials to the landowners by way of their engineer. Only after the materials had been excavated and declared unusable by the engineer did GBI's interest in the unusable materials arise.  This factor favors respondent.

As to the sixth factor, petitioners observe that the taxpayers in Parsons received only a set price for each ton of coal mined and delivered.  Petitioners conclude that this factor favors them because GBI received the set amount in the contracts

plus an additional amount paid by the third party/purchasers of crushed rock. We disagree with petitioners' conclusion. GBI was paid solely by the landowners under the contracts for excavation and grading services, and those services included removing the unusable materials from the sites. The ultimate sale of the unusable materials was a mere economic advantage that GBI derived by virtue of the contracts, rather than a dispositive factor in determining depletion deduction eligibility. See Helvering v. Bankline Oil Co., 303 U.S. at 367-368; Helvering v. O'Donnell, 303 U.S. at 372; Paragon Jewel Coal Co. v. Commissioner, 380 U.S. at 634-635; Parsons v. Smith, 359 U.S. at 224. We conclude that this factor favors respondent.

As to the seventh factor, petitioners observe that the taxpayers in Parsons were able to look only to the owners for all sums due under the contracts. Petitioners conclude that this factor favors them because GBI's receipt of payment was not solely from the landowners. Petitioners assert that the costs which GBI incurred to process the unusable materials into crushed rock for sale to the third parties were recoverable only from their sale of the crushed rock. We disagree with petitioners' conclusion. GBI agreed to excavate and grade the landowners' land, and those services required GBI to remove all unusable materials from the sites and to secure any necessary fill. GBI was able to look only to the landowners for payment for these

services.  Given that the contracts did not address any sale by GBI of the unusable materials, we conclude that any proceeds which GBI received from such a sale were incidental to the underlying contracts and merely an economic advantage derived from the contract.  This factor favors respondent.

For the foregoing reasons, we sustain respondent's determination.  We have considered all arguments made by the parties and have rejected those arguments not discussed herein as irrelevant or without merit.  Accordingly,

<u>Decision will be entered for respondent</u>.

APPENDIX

Sec. 1.611-1.  Allowance of deduction for depletion.--

     (a) Depletion of mines, oil and gas wells, other natural deposits, and timber--(1) In general.  Section 611 provides that there shall be allowed as a deduction in computing taxable income in the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion.  * * *  In the case of other [than standing timber] exhaustible natural resources the allowance for depletion shall be computed upon either the adjusted depletion basis of the property (see section 612, relating to cost depletion) or upon a percentage of gross income from the property (see section 613, relating to percentage depletion), whichever results in the greater allowance for depletion for any taxable year.  In no case will depletion based upon discovery value be allowed.

       *    *    *    *    *    *    *

     (b) Economic interest.--(1) Annual depletion deductions are allowed only to the owner of an economic interest in mineral deposits or standing timber.  An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place or standing timber and secures, by any form of legal relationship, income derived from the extraction of the mineral or severance of the timber, to which he must look for a return of his capital.  * * *  A person who has no capital investment in the mineral deposit or standing timber does not possess an economic interest merely because through a contractual relation he possesses a mere economic or pecuniary advantage derived from production.  For example, an agreement between the owner of an economic interest and another entitling the latter to purchase or process the product upon production or entitling the latter to compensation for extraction or cutting does not convey a depletable economic interest.  * * *

       *    *    *    *    *    *    *

     (d) Definitions.  As used in this part, and the regulations thereunder, the term--

       *    *    *    *    *    *    *

(3) "Mineral enterprise" is the mineral deposit or deposits and improvements, if any, used in mining or in the production of oil and gas and only so much of the surface of the land as is necessary for purposes of mineral extraction.  The value of the mineral enterprise is the combined value of its component parts.

(4) "Mineral deposit" refers to minerals in place.  When a mineral enterprise is acquired as a unit, the cost of any interest in the mineral deposit or deposits is that proportion of the total cost of the mineral enterprise which the value of the interest in the deposit bears to the value of the entire enterprise at the time of its acquisition.

(5) "Minerals" includes ores of the metals, coal, oil, gas, and all other natural metallic and nonmetallic deposits, except minerals derived from sea water, the air, or from similar inexhaustible sources.  It includes but is not limited to all of the minerals and other natural deposits subject to depletion based upon a percentage of gross income from the property under section 613 and the regulations thereunder.